# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHICAGO TITLE LAND TRUST Co., TRUST NO. 127632, ROBERT ANTHONY BRYANT, RIDGELAND CORPORATION, and RUFUS COOK | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| HON. JOEL CHUPACK, BANK OF AMERICA N.A., and its ASSIGNEE, U.S. BANK TRUST, N.A. as TRUSTEE for LSF9 MASTER PARTICIPATION TRUST, CITIMORTGAGE, INC., PIERCE & ASSOCIATES, CODILIS & ASSOCIATES, P.C., MANLEY DEAS KOCHALSKI, LLC, EDWARD PETERKA, LOCKE LORD, LLP, RYAN HOLZ, MICHAEL MCGIVENEY, HEAVNER, BEYERS, MIHLAR, LLC, | ) ) ) ) ) ) ) ) ) ) ) |
| AND | ) ) |
| HSBC BANK, USA, N.A., as Trustee, for the Registered Holders of RENAISSANCE EQUITY LOAN ASSET – BACKED CERTIFICATES, SERIES 2000-07, Randall S. Miller & Associates, LLC, POTESTIVO & ASSOCIATES, P.C., POULAMI MAL, and BRIAN NEVEL, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

# COMPLAINT AND JURY DEMAND

Plaintiffs CHICAGO TITLE LAND TRUST CO., TRUST NO. 127632, ROBERT

ANTHONY BRYANT, the RIDGELAND CORPORATION, and RUFUS COOK, as their

Complaint state as follows.

1

**CONTENTS**        **PAGE**

Parties ………………………………………………………………    2

Jurisdiction…………………………………………………………….    5

Venue…………………………………………………………………….    6

Preliminary Statement……………………………………………………    6

Facts……………………………………………………………………    8

Prayer for Relief………………………………………………..    45

## <u>PARTIES</u>

**Plaintiff** Chicago Title Land Trust, No. 127632, (CTT) is the holder of legal title to a residential condominium property located at 420 W. Grand, Unit 1A, Chicago, Illinois (the Grand property).

**Plaintiff** Robert Anthony Bryant (Bryant) is the former owner and mortgagor of the Grand property.

**Plaintiff** the Ridgeland Corporation (Ridgeland) Corporation is a beneficiary of the CTT Trust.

**Plaintiff** Rufus Cook (Cook) is a beneficiary of CTT Trust; and was the mortgagor of a residential property located at 951 E. Hyde Park Blvd (rear) Chicago, Illinois in favor of Delta Funding Corporation. (951 property), until Delta filed for bankruptcy liquidation December 17, 2007. Cook was falsely named as HSBC's mortgagor in Cook County Circuit Court Foreclosure Case No. 11 CH 37886 filed November 11, 2011.

**Defendant** Hon. Joel Chupack (Judge Chupack) is a Cook County Circuit Court Associate Judge assigned to the two subject Illinois foreclosure actions, one respecting the Grand property, 12 CH 11440, and the second the 951 property, 11 CH 37886.

**Defendants** Bank of America, N.A. and its assignee U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust (BA/UT) have falsely purported to be the mortgagee of the Grand property, and fraudulently pursued foreclosure thereof in the names of others and in its own name for fourteen years.

**Defendant** CitiMortgage, Inc. (Citi) has falsely purported to have become the holder of the Bryant Note and Mortgage by a September 1, 2007 merger with original holder ABN AMRO Mortgage Group, Inc., (AMRO), and to have conveyed by allonge its ownership to BA, making BA the holder. The merger documents establish that the merger occurred twenty-four days <u>after</u> the Bryant Note had been sold <u>unendorsed</u> to LaSalle Bank Midwest, N.A., making impossible the transaction asserted.

**Defendant** Pierce & Associates (Pierce), a Chicago law firm, filed a foreclosure action against Bryant, et al., in 2007, Case No. 07 CH 03857, Circuit Court of Cook County, Illinois on behalf of mortgagee ABN AMRO Mortgage Group, Inc., voluntarily dismissing the action in September 2012; it then re-filed the action in March 2012, Case No. 12 CH 11440, Circuit Court of Cook County, IL on behalf of Bank of America, N.A., asserting false and fraudulent claims on its behalf as to holder status. Thereafter it withdrew in or about April, 2014.

**Defendant** Codilis & Associates, P.C. (Codilis), a Chicago law firm, filed the Amended Foreclosure Complaint respecting the Grand property in April, 2014, Case No. 12 CH 11440, asserting false and fraudulent claims to holder status on BA's behalf until its withdrawal in or about May 2014.

**Defendant** Manley, Deas, Kochalski, LLC (Manley), is a Chicago law firm, which prosecuted the fraudulent foreclosure action respecting the Grand property from in or about 2014 when it substituted for Codilis & Associates, P.C. until its withdrawal January 8, 2019.

**Defendant** Edward Peterka (Peterka) at all relevant times was an attorney with Manley prosecuting the fraudulent Grand foreclosure claim until in or about January 2019.

**Defendant** Locke Lord, LLP, a Chicago law firm, has represented and represents UT in the Grand property foreclosure. (Locke)

**Defendant** Ryan Holz (Holz) was a partner at Locke until in or about October, 2021, serving as the lead attorney, asserting the fraudulent foreclosure claim of BA/UT to the Grand property.

**Defendant** Michael McGivney (McGivney) is and at all times relevant hereto has been as associate attorney employed by Locke, asserting the false and fraudulent foreclosure claims of BA/UT's to the Grand property.

**Defendant** Heavner, Beyers, Mihlar, LLC (Heavner) has since on or about January 2019 prosecuted with Locke, Holz and McGiveney the fraudulent Grand foreclosure claim.

4

**Defendant** HSBC Bank USA, N.A., as Trustee for the Registered Holders of Renaissance Equity Loan Asset Backed Certificates, Series 2000-07, (HSBC) fraudulently purports to be the mortgagee entitled to foreclose on the 951 property.

**Defendant** Randall S. Miller & Associates, P.C (Miller) in 2011 initiated the fraudulent foreclosure action respecting the 951 property subsequently withdrawing in or about February, 2014.

**Defendant** Potestivo Associates, P.C., (Potestivo) substituted for the Miller firm in or about February, 2014, and at all relevant times hereafter has prosecuted the fraudulent foreclosure action respecting the 951 property.

**Defendant** Poulami Mal (Mal) at all relevant times hereto has been employed as an attorney at Potestivo, engaged in prosecuting with that firm and Brian Nevel the fraudulent foreclosure action regarding the 951 property.

**Defendant** Brian Nevel (Nevel) at all relevant times has been employed as an attorney at Potestivo, engaged in prosecuting with that firm and Mal the fraudulent foreclosure action respecting the 951 property.

## **JURISDICTION**

Fourteenth Amendment to the U.S. Constitution 28 U.S.C.A sections 1331, and 1983.

## VENUE

Venue is proper in this court under 28 U.S.C.A. §1391 (because the real estate which is the subject of the suit is located in Chicago, Illinois, clear title thereto is sought in this suit, and the events that gave rise to plaintiff's claims took place within this district.

## PRELIMINARY STATEMENT

This complaint derives from the activities of two defendant banks, HSBC and BA/UT, each falsely claiming the right to foreclose on a residential property in which it has no interest whatever, i.e., foreclosure theft, intentionally committed through the filing of two false foreclosure complaints for the purpose of depriving plaintiffs herein of their due process rights and properties.

In 2007 HSBC became the Trustee for the certificate holders in a transaction wherein many notes and mortgages owned by Delta Funding Corporation and its affiliates were to be pooled and securitized by sale to a trust owned by the certificate holders. However, on the agreed closing date – August 1, 2007 – the Seller Delta Funding did not deliver, among others, the note and mortgage of Cook respecting the 951 property, which Delta owned and had agreed to deliver for the August 1 closing. Without the note properly negotiated and the mortgage assigned, and both delivered to HSBC as Trustee, there could be, and was, no closing. Yet, 4 years later, after Delta went bankrupt December 17, 2007 and was liquidated, HSBC fraudulently claimed to own the never-closed Cook-Delta documents while, now after over 14 years, never having produced the negotiated note or a valid mortgage.

BA is the second defendant bank here. By closely checking the chain of title, the foreclosure defendants learned that the two transactions by which BA claimed holder status were factually and legally impossible, given federal and local records accurately showing the transactions. The facts establish that BA had solicited fraudulent and false testimony in the subject BA/UT Illinois foreclosure action regarding securities in which it had, and has, no interest whatever.

In the course of defending against the foreclosure thefts attempted over time by the two banks, the foreclosure defendants discovered in and after May, 2021 that almost a year earlier, on July 16, 2020, with no notice before or after to them, Defendant Judge Chupack had entered a notice-less order granting a notice-less ex parte motion of HSBC's lawyers, the Potestivo firm, for leave to file an amended complaint, and in reliance thereon granted HSBC's motion for summary judgment followed by entry of a Judgment of Foreclosure and Sale re the 951 Property. Cook, a defendant in the HSBC foreclosure action, as noted, had received no notice of the court's year-earlier ex parte order granting leave to file the Amended Complaint.

In the coming weeks and months defendants in both foreclosure cases learned of other actions taken by the court in lockstep with the foreclosure plaintiffs and their counsel, which violate their due process rights, the laws prohibiting improper ex parte communications and the General Administrative Orders of the Chief Judge of the Circuit Court of Cook County, Illinois (GAOs) issued in connection with the COVID lockdown of the Circuit Court.

All of the actions described herein and below were state actions taken under color of state law by state actors, including private persons who assisted them, from the times in 2011 and 2012, respectively when the "foreclosure by theft" cases were fraudulently filed to the present.

# FACTS

## PART ONE A: HOW THE HSBC CONSPIRACY BEGAN AND CONTINUED INTO ATTEMPTED LARCENY BY FABRICATED ALLONGES.

**I. Delta Funding: Five months in 2007, from selling its assets as securities on August 1, to its December 17, 2007 bankruptcy liquidation.**

1. On June 23, 2007, Delta Funding Corporation, a mortgage lender, made a mortgage loan to Cook on the 951 property he owned in Chicago, Illinois, (**Ex. 1, 2 hereto**).

2. Also in June 2007, Delta was preparing to close on August 1, 2007 on a transaction wherein hundreds of real estate notes and mortgages owned by Delta and its affiliates would be securitized, pursuant to an agreement called a "Pooling and Servicing Agreement", the relevant parts of which are attached hereto as **Ex. 3**. HSBC was to serve as Trustee for the beneficiaries before and after the August 1, 2007 closing.

3. HSBC, and its attorneys have maintained falsely and fraudulently that the Cook mortgage and note were, respectively, assigned and negotiated by Delta to HSBC, and were included in the hundreds of notes and mortgages securitized in the August 1, 2007 securitization (per the Pooling and Servicing Agreement).

4. HSBC, responsible under the Agreement for obtaining and safe-keeping the supposedly endorsed Delta note and mortgage on and after August 1, 2007, has never produced the Cook note and mortgage supposedly negotiated to it by Delta on that date. (**See Ex. 3 hereto**). Without those properly negotiated documents, HSBC's claim to be the legal holder of the note and owner of the mortgage is without legal foundation. Producing no such documents

HSBC, and its then attorney, Miller as shown below, four years later filed a fraudulent

foreclosure complaint it <u>knew</u> was fraudulent, and falsely named itself as holder of the note and

mortgagee.

**II. If the Delta/HSBC transaction had closed HSBC would have had until on or about September 15, 2007 to Examine and Certify, or not, Delta's August 1, 2007 Securitization Documents.**

5.   The Agreement assumed that, after the August 1, 2007 closing there would be

substantial numbers of missing or defective documents, as apparently was the case with the Cook

documents. It provided time and measures for dealing with such post-closing problems. See (**Ex.**

**3 hereto**, Article II, sec. 2.01 to 2.05, pages 60-80). Thus HSBC, in its capacity as Trustee, was

by the Agreement given a period of 45 days after the scheduled August closing to

> "examine and certify that it", "has reviewed each mortgage file…and
> (i) all documents constituting part of each mortgage file required to be
> delivered pursuant to paragraphs (i), (v) and (vii) of section 2.01 ((a)) are
> in its possession, such documents have been reviewed by it and appear
> regular on their face and relate to such mortgage loan."

6.   Delta then would have been permitted time to address whatever problems HSBC had

discovered in the loan documents and had reported to Delta. Thus HSBC knew or should have

known by September 15, 2007 that there were no Cook/Delta documents in its possession, a

matter for which HSBC could be accountable because of its duties to receive, certify, safeguard

and account for the Delta notes and mortgages from and after the scheduled August 1, 2007

closing. (**See Ex. 3 hereto**). From August 1, 2007 to Delta's bankruptcy filing date of December

17, 2007 HSBC would have had more than 4 plus months, had there been a closing, to resolve

with Delta the problems with the Cook documents, which, as noted, WOULD HAVE BEEN ITS

CONTRACTUAL DUTY HAD THERE BEEN A CLOSING. HSBC having failed to do so,

Delta's bankruptcy intervened.

### III.  Delta's Bankruptcy Changes Everything.

7.   On December 17, 2007, Delta and its affiliates filed Chapter 11 bankruptcy liquidation proceeding No. 07-1181 in the U.S. District Court for the District of Delaware. See Ex. 6A. The August 1, 2007, securitization, substantially complete, was acknowledged by the bankruptcy court to have been a sale of those Delta assets. Ex. 6B. Accordingly, HSBC and the other parties to the Pooling and Servicing Agreement continued their actions thereunder, including pursuing and resolving claims for and against Delta in the bankruptcy.

8.   HSBC and its attorneys, Miller, and then Potestivo, also learned or should have learned upon reviewing Delta's documents within, at latest, the agreed 45 days after the scheduled August 1, 2007 closing, that it had no assignment of the Cook mortgage from Delta or its nominee, M.E.R.S, nor the negotiated  Note. See **Ex. 1, p.1 hereto**. By September 15, 2007 (the end of the 45 day period) HSBC <u>knew</u> it lacked **both** of the requirements of the law for holder status. (See **Ex. 3 hereto, sec. 2.01 et seq.**)  The June 23,  2007 Cook-to-Delta mortgage, makes clear on the first page thereof that Delta was <u>never</u> the mortgagee and that M.E.R.S. <u>was</u> the mortgagee as nominee for Delta from the beginning. On December 17, 2007, the unassigned M.E.R.S./Delta interest in the mortgage automatically became property of the Delta bankruptcy estate, not of HSBC, even if it was not listed and claimed as such. As noted, HSBC and its attorneys Miller and Potestivo have never complied with its duty to produce a note endorsed by Delta. Without that, HSBC's November 11, 2011 claim to be the holder of the note is simply false.

9.   As to the mortgage, the fact that it was not so listed or claimed in Delta's bankruptcy is apparent from Exhibit "C" to the Cook foreclosure complaint (**Ex. 2 hereto**), which is the

actual 2011 assignment by M.E.R.S. to HSBC, dated 4 years after August 1, 2007, which proves that the Delta/HSBC securitization effort clearly lacked the required mortgage assignment to HSBC August 1, 2007. Without that assignment the securitization regarding the Cook mortgage and note could not possibly have happened on August 1, 2007 when, per the mortgage, M.E.R.S. was the mortgage nominee, as it remained until its status was nullified by the bankruptcy December 17, 2007. M.E.R.S.'s position as mortgagee was unassigned by it until September 7, 2011, which proves there was no August 1, 2007 closing based on the Cook mortgage, which remained in the possession of M.E.R.S., unassigned, until the four-years-void 2011 assignment.

10. HSBC knew, and was required as trustee to know those facts as were its co-defendant attorneys on or before September 15, 2007. Four months later any HSBC's potential pre-bankruptcy claim was nullified with the filing of Delta's bankruptcy, leaving it to pursue in Delta's bankruptcy proceeding such recovery from the estate as might be had, which it did, as shown by **Ex. 6B**.

11. Further, by the various acts and failures to act described here, HSBC and Delta forfeited and waived any claim either may have asserted to the Cook documents. HSBC and its co-defendant attorneys acted illegally when they knowingly fraudulently sought to pursue Cook as though HSBC were the holder of the Cook note and the mortgagee. The record establishes Delta itself was only a former equitable owner at best after the August 1, 2007 non-closing, and, after the December bankruptcy, was a former equitable owner of the Cook note and mortgage. HSBC apparently chose not to pursue the Cook documents in the bankruptcy court as a Delta asset, but instead fraudulently sued Cook, through its attorneys Miller and Potestivo. Cook owed

HSBC nothing, but has been forced to defend himself for more than 11 years, suffering

substantial damages.

**IV.  The HSBC/Miller Claim in the November 2011 Foreclosure Complaint against Cook that HSBC was the Note Holder and the Mortgage Assignee were knowing fraudulent misrepresentations and torts which gave rise to a conspiracy between them and also proved their agreement to commit and the committing of those unlawful acts.**

12. When HSBC, by Miller, four years later in 2011 filed the foreclosure, the facts of record were known to it. It had, and knew it had, no ownership interest in the unendorsed Cook note and M.E.R.S. mortgage, and could not lawfully do what it through its attorneys did anyhow: file an illegal foreclosure against Cook by stealing Delta's identity and 4-years-gone right to foreclose. The record establishes that the Delta bankruptcy had already been held by the bankruptcy court to have been concluded before the foreclosure filing four years later.

13. Illinois law governing the requirements for "holder" and "mortgage" status are clearly set forth in the Illinois Commercial Code (and the "Illinois Mortgage Foreclosure Law") and are quoted herein. Those requirements include possession, endorsement, and delivery of the note, and being mortgagee or assignee of the mortgage. However when, first, Judge Darryl Simko in the Grand foreclosure followed by Judge Chupack thereafter in both the Grand and the Cook foreclosure heard motions challenging standing, both judges, despite repeated citing of the law, ignored the requirements of the Illinois Commercial Code altogether, which sets forth the law on which ownership, standing, and due process regarding negotiable instruments are based. Both judges, acting under color of state law, deprived the respective foreclosure defendants of due process consisting of a fair hearing based on the applicable law. Those rulings violate defendants' due process rights.

14. HSBC's fraud continues to be committed under color of law, by state action committed by Judge Chupack and assisted by HSBC and its lawyers, first Miller then Potestivo, Mal and Nevel who also became and are assistant state actors under color of law.

15. The foreclosure complaint filed by Miller against Cook and thereafter prosecuted by Potestivo, Mal and Nevel **(Ex. 4 hereto)** also fraudulently misrepresented the information required of all filers of foreclosure complaints. That statutory form requires filing of both confirming information and documents in order to assure compliance with the laws governing entitlement to file a foreclosure. HSBC's foreclosure complaint fraudulently asserts that it is the "current mortgagee" as well as the legal holder of the note. But then, when required by the statute to supply documents confirming ownership, it put forward not its own but the now void Delta note and mortgage. This constitutes an intentional act of deceit, fraud and theft by HSBC, Miller, Potestivo, Mal and Nevel.

16. As noted, and in summary, Delta's bankruptcy was filed December 17, 2007. As a matter of law its filing immediately made all of its property, no matter where or by whom held, part of Delta's bankruptcy estate. That included the unendorsed Cook note and the unassigned M.E.R.S. mortgage.

17. When HSBC filed the foreclosure four years later the Delta bankruptcy had changed everything. HSBC and its attorney-co-defendants purposefully and wrongfully acted – and made filings and prosecuted the foreclosure – as though the Delta bankruptcy had never happened. For example, **exhibit A,** to the Cook foreclosure complaint (the mortgage) filed November 11, 2011, shows **DELTA**, not HSBC, as "Lender"; and the four-years-earlier bankruptcy-replaced

M.E.R.S. was shown as "original" assignee/nominee of the mortgage "for Delta". Foreclosure complaint **Ex. B**, (the Cook note) <u>shows the 2007-liquidated **DELTA**, not HSBC,</u> as holder. Where the statutory foreclosure complaint form requires reference to documents showing plaintiff's ownership, HSBC and its attorney co-conspirators/defendants have stolen Delta's identity by citing, in 2011, the 2007 Delta/Cook documents, <u>as though they showed HSBC's ownership.</u> In HSBC's complaint subsections 3A and N, the conspirators complete the identity theft and violate Cook's due process rights by declaring HSBC to be "current mortgagee" and "legal holder" of interests in fact terminated in bankruptcy proceedings <u>almost five years before the foreclosure complaint was filed.</u>

18. The conspiracy grew over time as HSBC hired additional lawyers, the Potestivo firm substituting for the Miller firm. None performed their ethical and professional duty to review the pleadings and filings in the case before appearing, here in support of a false claim that depends on <u>identity theft apparent on its face.</u> None of the lawyers, in violation of the law and their responsibilities under the Illinois Rules of Professional Responsibility, cared that the complaint was baseless, having no <u>documentation</u> showing the necessary ownership in HSBC or anyone other than Delta, liquidated five years earlier.

19. The Miller firm which, as noted, with HSBC filed the complaint stealing Delta's identity, withdrew and was replaced as counsel for HSBC February 3, 2014 by the Potestivo firm. That firm, Mal and Nevel equally failed to perform their duty to read the complaint and other filings, appearing, despite the obvious identity theft and lack of an endorsed note or mortgage assignment, in support of HSBC's fraudulent foreclosure. Despite the complaint's tortious fraudulent misrepresentations, which they knew, HSBC, and Miller, chose to file it and

to begin the conspiracy's eleven years of torts, joined in by Potestivo, Mal and Nevel, causing Cook untold damage.

### V. The conspirators fabricate, and file, a fraudulent allonge.

20. On December 17, 2017, HSBC by Potestivo moved for summary judgment against Cook submitting a fabricated fraudulent allonge. The primary allonge, underlined and redacted, **Ex. 12,** on which the others rest, was supposedly executed by Delta in blank, (to bearer.) In its supporting memorandum of the same date, Potestivo, Mal and Nevel falsely averred that (on some unstated date):

> "Delta Funding Corporation later indorsed the Note (allonge) in blank, leaving the Note (allonge) payable to bearer. Although **the allonge containing the indorsement was not included with the Note attached to the Complaint,** Plaintiff filed its Complaint on November 1, 2011. The Complaint's filing date predates Illinois Supreme Court Rule 113 (b) (effective as of May 1, 2013), which now requires…".

21. In fact, Rule 113 (b) has nothing to do with the facts and law which determine an allonge's validity. The purpose of the Rule amendment was to require inclusion of a claimed allonge as part of the complaint.

22. First, the law requires that an allonge at all times be attached to the note to which it refers. Thus HSBC and Potestivo make a fatal dispositive admission when they say that the allonge was separate from the note.

23. Second, HSBC's story and that of its co-defendant attorneys is disproved by **Exhibit 3 hereto**, (the Pooling and Servicing Agreement), and the facts. As noted, the securitization was to close August 1, 2007. The Delta/Cook note and mortgage were excluded from the closing

partly because the mortgage was then held by M.E.R.S., as nominee, never by Delta. Without the

M.E.R.S. release document being held by HSBC on August 1, as the securitization Agreement

required, there could be no closing respecting the Cook documents. (**See Ex. 3 hereto, sec. 2.01**

**et seq.)**

24. Third, the Agreement **(Ex. 3)** precludes acquisition by HSBC of Delta properties

other than by negotiation of notes and assignment of mortgages as provided in the Agreement.

Acquiring title by allonge or bearer paper, the means by which HSBC and Potestivo and its

attorney co-defendant <u>say</u> HSBC acquired holder status, is prohibited and precluded by HSBC's

own securitization Agreement.

25. Fourth, HSBC by its then attorney Miller falsely declared in its foreclosure complaint

filed November 11, 2011 that it, as the law required, was then the legal holder of the note and the

mortgagee. Then, after a failed securitization, and a bankruptcy that confirmed in 2007 HSBC's

and Delta's lack of any interest in Cook's property, it and its attorney co-defendants/conspirators

fabricated an allonge *which disregards the bankruptcy of which HSBC knew and in which it*

*participated, and which it knew showed the allonge was invalid, fabricated, and based on a*

*claim shown in the bankruptcy court in 2007 not to exist.*

26. On July 16, 2020, HSBC and its attorneys through illegal ex parte communication

with Judge Chupack obtained leave to file an Amended Complaint, pleading falsely and updating

the amount allegedly owed including alleged interest from the 2011 filing onward. Cook was at

HSBC's attorneys urging denied by the court an opportunity to move against the complaint by

filing motions to dismiss provided for by the Illinois Code of Civil Procedure. Instead the court

ordered that he could not exercise these due process rights but could only "answer" or be subject to entry of a default judgment, which in fact occurred.

27. HSBC, Potestivo, Mal and Nevel undertook to have their motion for leave to file an amended complaint granted, no matter what it took, and what it took was improper ex parte communications by Mal and Nevel or others in the Potestivo firm or their agents and other co-conspirators with Judge Chupack, conspiracy, and total evisceration of Cook's due process rights. These and other allegations are discussed below, after the facts relating to *BA/UT vs. Bryant, et al.*, the second of the Judge Chupack foreclosure cases.

**PART ONE B: HOW THE BA/UT.CITIMORTGAGE CONSPIRACY BEGAN AND, AS WITH HSBC, CONTINUED INTO THE CRIMINAL ACTIVITY OF FABRICATING SECURITIES, FACTS DISCOVERED IN 2019 BY PLAINTIFFS HEREIN.**

**VI. BA's claim made in its Amended Complaint filed by Codilis, that BA was the Note Holder and the Mortgage Assignee, were knowing fraudulent misrepresentations and torts which also, like the case with HSBC, gave rise to an allonge conspiracy, which continues to today.**

28. Plaintiff in the April 1, 2012, foreclosure case (No. 12 CH 11440) against Bryant et al., initially BA (then UT), which case was filed by defendant Pierce, was and is unable to produce both a mortgage owed to it, and a note payable or endorsed to it. The copy of the unendorsed note filed with that 2012 complaint was payable to ABN AMRO Mortgage Group, Inc., not to BA. As shown, Illinois Mortgage Foreclosure Law has always required the plaintiff, or its successor in a foreclosure suit to prove it is both the legal holder of the note and owner of the mortgage irrespective of the fact that it was only in May 2013 when Rule 113 was amended to require attachment by a foreclosure plaintiff of a relied upon allonge to the complaint. Thus from the very beginning BA and its attorney-defendant-co-conspirators purposefully took

wrongful actions, which were intended to and did deprive the Grand foreclosure defendants of their due process right to defend against documented foreclosure theft.

29.     BA and its 2015 assignee UT have claimed, contrary to the BA 2012 complaint filed by defendant Pierce and 2014 amended complaint filed by defendant Codilis, that BA became the holder of the subject Bryant note by having received, on or before the April 1, 2012 foreclosure filing date, an allonge from Citi. The allonge, they say, was made possible by a merger of previous holder ABN AMRO into Citi on September 1, 2007. Foreclosure defendants' research of the transaction revealed, however, the since-admitted fact that the merger shown by **Ex. 7E**, AMRO into Citi, did not happen until September 1, 2007, 24 days after AMRO already had assigned and sold the subject note to LaSalle Midwest Bank, and thus BA/UT could not have acquired the already-sold and assigned (but unendorsed) note in the September 1, 2007 merger. BA/UT and their attorney co-defendants and Citi thus conspired and created a fraudulent set of allonges whose validity has been proved impossible, and has been revealed by Plaintiffs herein as foreclosure theft.

>   **A.  Citi never acquired the note by allonge or otherwise, nor had possession of it and is an interloper aiding in the theft being committed by BA/UT and their lawyers/conspirators.**

30.     Checking records of the relevant agencies, including those of the Securities and Exchange Commission, various state and county records and others, (see attached **Exhibits 7B to 7J**), revealed that, on August 6, 2007, 24 days before merging into Citi, AMRO had sold and assigned its entire interest in Bryant's *unendorsed* note to LaSalle Midwest Bank, (**Ex. 7B**), a company at that time having nothing to do with BA or Citi.  The note was transferred to and accepted by LaSalle Midwest Bank on August 6, 2007. Foreclosure Defendants' research

revealed that a merger occurred, but on September 1, 2007 and that AMRO had, 24 days <u>before</u>

the merger, transferred the Bryant note to LaSalle Midwest Bank without endorsement. Thus

when the Citi/AMRO merger in fact occurred 24 days later, on September 1, 2007, AMRO held

no interest in <u>Bryant's note</u> and Citi could not have acquired it by that merger. By making those

tortious fraudulent misrepresentations, Citi furthered, entered and joined a years-old felonious

conspiracy, in which BA/UT and their attorney co-defendants had illegally sought to acquire the

Bryant note based on other false documents.

31.   The unendorsed note thus was <u>transferred</u>, <u>not negotiated,</u> August 6, 2007 as

described below, and Midwest by that assignment became only its <u>transferee, not its holder.</u> Thus

BA/UT had no legal right to file a foreclosure suit.


**B. Several other facts disprove Citi's allonge: the exhibits also show, for example, that Citi was never in possession of the note and thus by law could not negotiate it.**

32.   The August 6, 2007 assignment from AMRO to   <u>LaSalle Midwest shows,</u>

<u>indisputably, that Midwest, not Citi, was AMRO's successor.</u> (**Exh. 7B**).  The allonge is void

and intentionally false.


33.   Further, the law requires that an <u>endorser have possession</u> of the note. The Illinois

Commercial Code, 810 ILCS 5/3-201 (a) and (b) provide:


>    "5/3-201(a) "Negotiation" means a transfer of <u>possession</u>, whether
> voluntary or involuntary of an instrument by a person other than the
> issuer to a person who thereby becomes its holder.
>
>    5/3-201(b) Except for negotiation by a remitter, if an instrument is
> payable to an identified person, negotiation requires **<u>transfer of
> possession of the instrument and its indorsement by the holder.</u>"**
> (Emphasis supplied)

The Official Comment then notes:

> "Negotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent."

> "(See *In re Diamond Mortgage Corp.,* 78 Bankr N.D. Ill. 1987 *Locks v. North Towne Nat'l Bk,* 115 IL. App.3d 729, 451 N.E.2d 19 (2 Dist. 1983)**"

34. There is no dispute that Citi never had possession of the note, which went by assignment from AMRO on August 6, 2007 **(Ex. 7B)** to LaSalle Bank Midwest, and on October 17, 2008 by merger from Midwest to BA. **(Ex. 7D).** Thereafter BA apparently had possession of the Bryant note, assigning it without endorsing it September 18, 2015 to UT **(Ex. 7E hereto).** *No matter what the date of the "allonge" from Citi, which is redacted, and in addition to the several other bases for its voidness, it is also a nullity because* <u>*Citi never had possession*</u>*, and is shown by the chain of title provided in the exhibits to be an interloper.*

## C. BA/UT's own pleadings and exhibits disprove its claims.

35. As noted BA was since October 17, 2008 "successor to LaSalle Bank Midwest" (**Ex. 7E**). On September 18, 2015 BA "assigned all interest" in the Bryant note to UT. In the BA to UT September 18 assignment *BA* <u>*itself*</u> *admitted* that its claim (to transferee status) came, not from Citi, but instead LaSalle Midwest, which transferee status was all that non-endorsee Midwest received from Amro.

36. Nonetheless, BA/UT, and its attorney co-defendants Manley and Peterka, three years later in 2018 urged the judge then handling the case to accept the impossible: that CitiBank

acquired the note through the merger that happened 24 days *AFTER* Amro had assigned the note to LaSalle Midwest.

37.    On September 18, 2015, as noted, BA assigned its interest as transferee to UT which fact also shows that as of September 18 the allonge **(Ex. 6)** had not yet been fabricated and delivered. That fact is of substantial significance. BA declared in that assignment that it had on September 18, delivered <u>possession</u> of the note to UT, having had possession of it since its transfer to BA by its 2009 merger with LaSalle Midwest. Thus, Citi clearly could never have been in possession of the note, from October 17, 2009 when BA acquired it **(see Ex. 7D)** until September 18, 2015 **(Ex. 7E)** when BA certified that it delivered the note to UT.   And, as noted, negotiation cannot occur without delivery of possession to the new holder. Indeed Citi, knowing it had never been in possession of the note, is proven to have lied to further the BA/UT conspiracy whenever needed.

38.    The false Citi allonge had not been delivered to BA before the September 18, 2015 assignment, let alone the April 1, 2012 filing date of the foreclosure.  Both facts further prove the Citi/BA/UT allonge is a fabricated nullity intentionally done by them with the participation or acquiescence of their attorneys with malice over a period of more than ten years, which fabricating has caused and is causing irreparable harm, and damages to plaintiffs, said fabrication being adopted by Pierce, Codilis, Manley, Peterka, Locke, Holt, McGivney and Heavner. (Hereinafter follows the facts relating to Judge Chupack's and others' ex parte communications in both foreclosure cases, and his and others' violations of the General Administrative Orders of the Chief Judge of the Circuit Court of Cook County, Illinois.)

**PART TWO: THE TWO GROUPS OF CONSPIRATORS ACTED IN CONCERT WITH JUDGE CHUPACK IN AND AFTER JULY, 2020 TO COMMIT A SERIES OF CONSPIRACY-FURTHERING NON-JUDICIAL ACTS TO WHICH JUDICIAL IMMUNITY DOES NOT APPLY, AND WHICH DID, THEN AND NOW, DENY DEFENDANTS IN BOTH FORECLOSURE ACTIONS DUE PROCESS.**

39.    The May 28, 2020 General Administrative Order (GAO) 2020-01 of Circuit Court

Chief Judge Timothy Evans, attached hereto as **Ex. 8A,** provides as follows:

> "IT IS HEREBY ORDERED that, except as provided below or until further   order of court, *all matters in all Districts and Divisions of the court are rescheduled and continued* for a period of 30 days from the currently scheduled court date, or the date as noticed by the clerk in accordance with this order, *or a date not more than 30 days after July 6, whichever is later.*"  (Page 1); emphasis supplied.

40.    GAO 2020-01 thus ***ITSELF*** rescheduled and continued the foreclosure cases for 30

days "from the currently scheduled court date" (which in both foreclosure actions was July 10,

2020).  In other words, while both cases were "currently scheduled" for Judge Chupack's court

on July 10, 2020, GAO 2020-01 as of May 28, 2020  had already rescheduled and continued <u>both</u>

to August 9, 2020, the "later" of a period of 30 days from the "currently scheduled court date".

That order, as it stated, was in effect "until further order of court."

**VII.   Circuit Court personnel attempted to follow the Chief Judge's GAO 2020-01, but were prevented from doing so by Judge Chupack's ex parte acts and void orders, which were disregarded on and after July 3, 2020 and violated as well GAO 2020-02.**

41.    On June 29, 2020, Cook received from the Circuit Court Clerk's office a

postcard, complying with the Chief Judge's May 28, 2020 GAO 2020-01 advising Cook

that his foreclosure case, no. 11 CH 37886, was set for Friday, July 10, 2020 at 2:00 p.m.

"before Judge Chupack, Joel in room 2809". The notice further complied with Judge

Evans' May 28 GAO when it went on:

> "Do <u>not</u> come to the courtroom on that date. You will be contacted <u>from</u>
> <u>Judge's chambers</u> and notified how the court will proceed with your case.
> **<u>Your rights will be fully protected.</u>** <u>The court will administer your case</u>
> <u>under procedures set forth for resuming court operations.</u> Please consult
> with the court's website cookcountyclerkofcourt.org for further
> information."
>
> **(See EX. 9A)** (Emphasis supplied.)

42.    In response to that Notice directing him **"not to appear"** and assuring that his

rights **"will be fully protected"**, at Cook's request attorney Barbara Revak sent to the

chancery court clerk July 9, 2020, an email which asked: "Please email me notice of the

NEXT COURT DATE in the above referenced case…". **(Ex. 9B)**

43.    No response was received to that email by 2:57 p.m. on July 9, 2020, (nor

ever) and therefore Revak then sent an email to Judge Chupack, which asked: "Is this

case scheduled for July 10, 2020 in room number 2809 at 2:00 p.m.?" **(Ex. 9B)**

44.    Within four minutes of sending that email the following email was received from

Judge Chupack's law clerk, Emily Dhanens, which is in accord with the Chief Judge's order, and

the June 29 clerk's office postcard.

> "Hi Barbara, I am Judge Chupack's law clerk. No, this case will be
> continued. Please do not come to court tomorrow. We are trying to prevent
> as many people from coming to the courthouse as possible. I will talk to
> Judge Chupack and see what he wants to do. I will get back to you as soon
> as I can. Thanks.". **(Ex. 9D)**

45.     Despite those orders, notices and reassurances, Cook never received any notice that either case was, or had been continued.   He also never received any further communication from the Clerk's office or Ms. Dhanens or Judge Chupack following up on their communications of June 29 and July 9, 2020.

46.     In light of these communications, the foreclosure defendants in each suit assumed that the apparent inactivity resulted from the lockdown. In fact, there was fevered activity; it was simply kept from the foreclosure defendants, as shown below, by use of undisclosed improper emails, improper ex parte acts and communications, secret orders not disclosed but revealed ultimately as shown below. The following of the Chief Judge's GAO 2020-01 by Circuit Court personnel ceased on July 10, 2020 when, instead of entering an order acknowledging the continuance to August 9 as required by the May 28 GAO, no such order was served on Cook. Instead, with no notice ever being provided to defendants (in either case), an ex parte order was entered by Judge Chupack on July 10 <u>in the BA/UT case,</u> setting a hearing for August 11, 2020. The remaining facts are set forth below in chronological order.

47.     Both GAOs expressly applied to "… all matters in all Districts and Divisions of the court…". GAO 2020-01 achieved uniformity in case resumption dates by requiring that ***"the currently scheduled court date"*** be identified for each case. However, Judge Chupack's two foreclosure cases against Cook and Bryant et al. were treated differently from all others, and differently from each other.

**VIII.   <u>In both subject cases, 10 days apart,</u> between July 6 and 16, 2020 Judge Chupack and counsel, named defendants herein, engaged in and permitted improper ex parte communications, and the court entered no-notice orders pursuant thereto, secretly "granting" null orders violating those of the Chief Judge.**

A. **Judge Chupack, BA/UT, Locke, McGivney, Heavener, Potestivo, Mal and Nevel disregarded and violated GAOs 2020-01 and 02 along with violating due process at every turn.**

48.    The May 28, 2020 Chief Judge's continuance order (quoted above), stated as of that date that "all matters in all districts and divisions are rescheduled and continued…". When the cases appeared on Judge Chupack's docket July 10, 2020 the order continuing both had already been in effect since May 28, 2020. As defendants in both cases would learn later, ex parte orders were entered July 10 by Judge Chupack despite the lockdown ordered by Chief Judge Evans with no notice to defendants before and no disclosure by the court or the Clerk received by them, even after.

49.    The ex parte episodes and the orders entered based thereon by Judge Chupack were finally disclosed by counsel defendant McGivney *twenty-four days later*. No reason was ever given for the delay and non-service except that he "thought" that notice of the July 10 order had been given. Failure to give notice violated the Fourteenth Amendment and rules of law requiring notice and due process, but also violated the express commands of both GAOs 2020--01 and 02. Those commands were directed to the judges and lawyers and others responsible for fairly and lawfully re-opening the courts. Some of the extraordinary results BA/UT, Locke, Holz, McGivney and Heavner and the judge produced from their unlawful July 10 agreement to commit improper ex parte acts and cause multiple violations of the 2020-02 order are listed below. All are torts, whose commission gave rise to conspiracy between Judge Chupack, Locke, Holz, McGivney and Heavener together with Potestivo, Mal and Nevel, lawyers in the 951 foreclosure.

50.    First, the July 10, 2020 ex parte agreement between BA/UT, the Judge, Locke, Holz, McGivney and Heavner entails statements by Judge Chupack violating the orders of a superior Judge, which actions all involved knew Judge Chupack had no power to take. The Chupack order directing a July 10 ex parte court occurrence on the very day when there was by order of the Chief Judge suspending court proceedings *(with Cook __directed__ not to appear)* voids on due process grounds Judge Chupack's orders and actions taken pursuant thereto. Those include the additional void order entered at the void supposed July 10 ex parte court proceeding, where the hearing on Bryant's motion to dismiss for lack of standing was __ordered__ to occur August 11, 2020 violating the GAO 2020-02 command, which had  __just become effective July 6, 2020__, that "judges shall contact the attorneys __and__ self-represented litigants…and determine" whether a hearing is needed; how it should be conducted; (and) the date of the next court proceeding, including any continuances. Also void with the July 10 ex parte order is the order setting hearing on __Bryant's__ motion to dismiss for lack of standing. Foreclosure defendants could not object at the time to the July 10 ex parte orders which, as shown, they knew nothing of until four days before the "argument".

51.    The effect of the July 10 ex parte scheduling order in the Grand foreclosure was to enable BA/UT, Locke, Holz, McGivney, and Heavener, and the Judge to maintain that 2020-02's requirements to communicate with defendants and their counsel no longer required compliance regarding sharing scheduling because that scheduling had already been done in the no-notice ex parte July 10, hearing/order kept secret by them until August 4, when finally revealed by McGivney, not the clerk or Judge.

52.     The ignoring by the court and BA/UT's counsel of the GAOs, the engagement in unlawful ex parte communications, the failure to disclose or give notice of these unlawful actions described with respect to the Grand foreclosure also occurred in the 951 foreclosure wherein such actions were undertaken by Judge Chupack, HSBC, Potestivo, Mal and Nevel.

53.     The wrongful conduct described herein constitutes violation by defendants Chupack, BA/UT, Locke, Holz, McGivney, Heavner, HSBC, Potestivo, Mal and Nevel of plaintiffs' right to due process.

**B.  Judge Chupack further disregards and violates both GAO 01 and 02, and dispenses with due process with every action and order, post July 10 in both cases.**

54.     As plaintiffs herein were to learn months later, in the 951 foreclosure action HSBC, Potestivo, Mal, Nevel and/or their agents prepared and caused to be delivered to Judge Chupack, then officially working remotely, an order dated and signed July 16, 2020. **(Ex. 10 hereto).** Therein the court purported to grant HSBC/Potestivo attorneys and the un-noticed, ex parte, unlawful motion for leave to file an amended complaint, while performing the non-judicial act of disobeying the rescheduling and continuing" GAO 2020 -01, which had already become effective May 28, the applicability of which the court personnel had confirmed on July 9 and before. **See (Exs. 9A to 9D).** The July 16 order, in a portion apparently handwritten by the judge, purported to vacate an earlier ex parte order entered July 13, 2020 known only to him and the HSBC/Potestivo defendants, by which he had purported to strike the same Motion for Leave to file an Amended Complaint which on July 16, he purported to grant, all with no notice before, after or since, and all in violation not only of GAO 2020-01 and -02 but also of the Illinois Supreme Court  Rules, the Illinois Code of Civil Procedure, and the other laws, practices and

customs which  judges  are required to obey in performing judicial acts. The defendants in each

of the two foreclosure cases received no notice before, on or after July 6, 2020 (the Grand

foreclosure) and July 10, 2020 (the 951 foreclosure) of the ex parte events which occurred before

and thereafter.

### C. Judge Chupack conveys to BA/UT, Holz, Locke, McGivney, Heavener, HSBC, Potestivo, Mall and Nevel: "The Contact and Schedule" provisions of GAO 2020-02 will not be followed.

55.   The Chief Judge, as noted, on July 6, 2020 had ordered:

> **"1. Effective July 6, 2020**
>
> > a.  ALL DIVISIONS AND DISTRICTS . . .
> > > ii   Judges *shall* contact the attorneys and self-represented
> > > litigants in all cases on their docket currently scheduled
> > > for a hearing of any kind and determine the following:
> > > > 1.  whether a hearing is necessary;
> > > > 2.  whether a necessary hearing can be conducted by
> > > > videoconference, teleconference, or must be conducted
> > > > with some or all participants in the courtroom;
> > > > 3.  the date of the next court proceeding, including any
> > > > continuance."
> > > > (GAO 2020-02, p.2 ;) emphasis supplied.

56.   Even though both foreclosure cases were continued to August 9, 2020 per the May

28, 2020 GAO 2020 -01, *and* even though "effective July 6, 2020", GAO 2020-02 required "all

judges ("shall") "contact the attorneys in all cases on their docket scheduled for a hearing of any

kind and determine . . . those issues specified in the order". Circuit Court of Cook County Rule

17 makes emphatically clear that "contacts" are <u>NOT</u> TO INVOLVE IMPROPER EX PARTE

COMMUNICATIONS.  Judge Chupack, as documented below (A) disobeyed (but could not

lawfully undo) the May 28 continuance order of the Chief Judge, which remained in effect and

thus nullified Judge Chupack's attempted  countermanding orders; (B) violated the order that

attorneys and self –represented litigants "shall" be contacted, leaving the foreclosure defendants with no knowledge of the ex parte scheduling and hearing orders agreed to by Judge Chupack by email through his clerk and UT's attorneys Locke, Holz, McGivney, and Heavner all without the knowledge or participation of plaintiffs herein or their counsel.

**D. Judge Chupack also conveyed to BA/UT, Locke, Holz, McGivney, Heavner, Potestivo, Mal and Nevel through his actions that he would disregard notice and disclosure requirements and the law.**

57. As shown below, the early and later July 2020 Chupack orders were not disclosed nor discussed until revealed in the HSBC foreclosure action in June, 2021 in Potestivo's motion for summary judgment. Between July 16, 2020 and July, 2021, in both subject cases, the court made several rulings with only its co-conspirators BA/UT, HSBC and their attorneys having knowledge of the secret rulings made during and despite the supposed COVID Lockdown of the Circuit Court.

58. During the year from July 2020 to July 2021 Judge Chupack first disobeyed Circuit Court Rule 17, which prohibits improper ex parte communications, <u>and</u> requires any such communication to be promptly disclosed. Next the judge continued throughout 2020 and 2021 to disobey not only GAO 2020-01 and 2020-02, as shown above, but also violated GAO 2020-<u>15</u> in the course of additional unlawful rulings he made on October 10, 2020, and on January 27, 2021. Those rulings, and others, resulted in the court's unlawful entry of default judgments against Grand foreclosure defendants *Bryant et al.,* who had filed appearances years earlier, and had filed outstanding motions which, as a matter of law, precluded default.

59.    Next, he ruled adversely to Grand mortgagor Bryant on his no-standing motion August 11, 2020, ignoring the required statutory criteria governing negotiation of negotiable instruments, and the requirements of the Illinois Mortgage Foreclosure Law.

60.    On February 10, 2021, he granted UT's and the motion of its attorneys Locke, Holz, McGivney and Heavner for entry of defaults and judgments in the Grand foreclosure action against parties who had appeared and who had filed motions pending, with the result that the defaults and judgments are null, violating as they do the due process rights of Plaintiffs herein.

61.    Judge Chupack's series of anti-judicial, unlawful actions, not performing but violating his sworn duty to follow the law, defeat any claim to judicial immunity.

**E.    The court's ex parte communications and orders when considered with UT's and its counsel's then-undisclosed emails show what really occurred.**

62.    On July 6, 2020, while the May 28 continuance was in effect (not ending, as noted, until August 9, 2020), McGivney emailed Judge Chupack's clerk "Emily" (Dhanens,) sending a copy to Barbara Revak, attorney for Bryant, CTT and the beneficiaries, stating:

"Emily:

*As promised,* I am attaching a complete set of pdf courtesy copies regarding Defendant Tony Bryant's Motion to Dismiss for Lack of Standing, including:

1. Bryant's motion to dismiss for lack of standing filed January 21, 2020;
2. Bryant's memorandum in support of his motion filed February 10, 2020;
3. Co-defendant Chicago Title's joinder of Bryant's motion filed February 10, 2020;
4.  Plaintiff's response in opposition to Bryant's motion filed February 24, 2020;

5. Bryant's reply in support of his motion filed March 4, 2020.

These pdfs were tabbed (bookmarked) *per your instructions*, but please let me know if any changes need to be made. Additionally I am also enclosing a proposed order in word format *per your request*. Please let me know if you or Judge Chupack require anything else and we would be happy to assist. **(Ex. 11 B)**
s/Mike McGivney …" .   (Emphasis supplied.)

63.    As the quoted email makes clear, Judge Chupack here again via ex parte communications made through his clerk communicated to BA/UT, Locke, Holz, McGivney, and Heavner that he, via that email, was violating and would not follow GAO 2020 -02, WHICH DIRECTED THE COURT TO CONTACT <u>ALL</u> ATTORNEYS TO ADDRESS THE VERY MATTERS ALREADY ADDRESSED IN THEIR EX PARTE EMAILS.

64.    The command of GAO 2020-02 as it applied to Judge Chupack in the two subject cases was violated by him in that no contact was ever made with the foreclosure defendants as directed in sub-sections ii and iii. He continued to violate the orders issued by the Chief Judge, which it was his duty to follow, including grossly violating laws which, though not the GAOs issued by Judge Evans, <u>are</u> part of the laws and of the requirement for due process he and all judges are bound to follow requiring notice and disclosure to litigants. *Among them is the duty to afford <u>and</u> enforce, not deny, due process*. Judge Chupack's receipt of the unsigned July 16 order from HSBC, Potestivo, Mal, and Nevel and consideration of it were not noticed to Cook.

65.    At no time before or after July 6, 2020, did Judge Chupack comply with the order to contact *pro se* defendants or counsel even though the pending motion to dismiss was <u>Bryant's</u>, not UT's.  The McGivney-drafted "proposed order" set the matter for an August 11, 2020 "zoom" hearing, with no contact having been had by the judge  with Bryant's counsel, and

without a single day of the 30 allotted for "contact and schedule" having expired. (See below). Judge Chupack's actions violated not only 2020-01 (continuance), and 2020-02 (contact both sides), but his communications and contacts with BA/UT, Locke, Holz, McGivney, Heavner, Potestivo, Mal and Nevel via his clerk (*or* directly), violate the universal prohibitions against improper ex parte communications, a clear matter of due process. (See: Circuit Court of Cook County Rules, 17.1-4 "Ex Parte Communications Prohibited"; Supreme Court Rules 62 and 63 A (5) (C) (1) (a), (C) (e) (iv) (Canons 62, 63) and Illinois Rules of Professional Conduct 3.5 (a), (b); and Rules 8.4 (d) (f).)

66.     Having received from McGivney for the first time the July 10, 2020 order on August 4, 2020, twenty-four days after entry, Revak immediately on August 5, 2020 advised him of an error in his proposed order.

> "Mike:
>         Please note that the order you prepared in the above-referenced case, which was entered by Judge Chupack on July 10, 2020 and emailed by you to me on August 4th , contains an error on page one.  Bryant's Motion to Dismiss…" was not filed January 21, <u>2019</u>, but in <u>2020</u>.  You need to advise the court and have it corrected.
>         Also, the July 10th order does not state what is to occur on August 11th. Is it a status or for argument?  Please advise. Thank you." **(Ex. 11C)**

67.     On August 5, 2020 McGivney emailed "Emily", advising of his "scrivener's error". (He was not required by the court to submit an amended order.)  **(Ex. 4)**  In response to Revak's question as to what the nature of the August 11 2020 hearing ordered ex parte July 10 by Judge Chupack might be, McGivney, revealed <u>yet another ex parte communication</u>:

> "Thank you for alerting us to the scrivener's error.  We will make note of it to the court.
>
> *The <u>court informs us</u> that the hearing next week is for oral argument.* (Emphasis supplied.)

Not only were the 2020-01 (continuance) and -02 (court to contact pro se parties' or attorneys) GAOs disobeyed, but improper ex parte email communications, as documented, were the means by which those offenses were committed.

IX. **Foreclosure defendant Bryant's Motion to Dismiss for Lack of Standing is improperly scheduled and decided even though the judge's secret July 16, 2020 order remains known only to him and the two groups of foreclosure plaintiffs/conspirators.**

A. **Judge Chupack used the unlawful ex parte July 10 order to schedule the August 11 zoom conference in violation of due process as well as the GAOs, voiding the August 11 order.**

68.   On August 11, 2020 at the zoom conference set by violating the explicit GAOs of the Chief Judge, Judge Chupack denied Bryant's motion to dismiss, holding:

"ORDER"

This cause coming to be heard on Defendant, Tony Bryant's, Motion to Dismiss for Lack of Standing filed January 21, 2020; the parties having completed briefing on March 4, 2020; counsel for Plaintiff , U.S. Bank Trust,  N.A., as Trustee for LSF9 Master Participation Trust having delivered a complete set of courtesy copies to the Court by email on July 6, 2020, due notice having been given; oral argument having been heard; the Court finding that Plaintiff is the holder of the Note, and the Court being otherwise fully advised in the premises:

IT IS HEREBY ORDERED THAT;
1.   The Motion to Dismiss for Lack of Standing is denied;
2.   Defendant Tony Bryant shall file his Answer to the Amended Complaint within 21 days from the entry of this Order." **(Ex.11E)** Emphasis supplied.

69.    In addition to the order's triple illegality as detailed above: (continuance, judges'

contact, and ban of ex parte decision-making), all or any of which must void the order, other

noteworthy facts include:

   i. The July 16 2020 undisclosed order remained known only to the conspirators,
   including the judge, when the standing motion was heard August 11, 2020. That fact and
   some of its consequences are discussed separately below.

   ii. The August 11 order misstates   the real sequence of events regarding
   "Emily's" request that non-movant McGivney provide the courtesy copies customarily
   provided by the movant.  The custom and practice of the movant supplying the court with
   courtesy copies was replaced on July 4, 2020 by "Emily's" email to McGivney,
   requesting that he, not the movant, provide the judge with courtesy copies.

   iii.   As noted above, after-the-fact notice of ex parte contacts neither excuses
   them, nor means that "due notice" has been given nor that the offense did not occur, all of
   which are misstated by the August 11 order.

   *iv. The statutory requirements to become a legal holder of a note are nowhere
   found to have been met, or even mentioned, by the order.*

   v.    The order directed ("shall") Bryant to answer the complaint "within 21 days",
   thus denying him the right to "answer or otherwise plead", for example, under Illinois
   Code of Civil Procedure sections 2-615 or 2-619, which rights are essential to due
   process.

**B.   The Sequence of Events also Shows that by July 10, 2020, the Judge, BA/UT
   Locke, Holz, McGivney, Heavner, HSBC, Potestivo, Mal and Nevel had colluded
   to violate and were violating GAO's 01 and 02, which included the COVID
   lockdown orders, the prohibitions against ex parte communications, and the
   constitutional requirement that state actors and their assistants afford due process
   of law.**

70.    In the HSBC case, as shown, notices were issued by the Clerk's office on June 29,

2020 and by Judge Chupack's clerk on July 9, 2020 that Cook should not appear on July 10

because of the COVID lockdown imposed by court order, but that his "rights would be

protected". The BA foreclosure was subject to the same GAOs 01 and 02. Yet, instead of being

directed not to appear because the case had been and would be continued on July 10, another ex

parte order was entered by Judge Chupack **dated July 10, 2020 scheduling Bryant's no-standing motion for August 11.** *Bryant, et al.* received no notice of the July 10 ex parte communication, and no notice of the court's order, until as noted, McGivney finally supplied it 24 days later, incidentally, in an email from McGivney to Revak about another subject.

71.     Moreover, precisely the same laws and duties were violated in the HSBC case by HSBC, Potestivo, Mal and Nevel and the judge *by and before July 10.* The actions taken by BA/UT, Locke, Holz, McGivney, Heavner, HSBC, Potestivo, Mal and Nevel were taken in concert with the court's active disobeying of the law in common cause with its co-conspirators. These actions constitute conspiracy and collusion to violate, and violations of, due process and equal protection, not limited only to state action, but with state leadership, supplied by the Judge.

**X.     Judge Chupack denies foreclosure defendants' petitions for recusal and for substitution for cause and instead in further violation of the rights of plaintiffs to due process, unlawfully entering Judgments of Foreclosure and Sale as to both properties.**

72.     In 2021, a motion for voluntary recusal and Petition for Substitution for Cause was filed by Cook and denied in the Cook foreclosure, and a Motion for Substitution for Cause was denied by Judge Chupack in the Grand foreclosure even though it was not presented to him and had been filed only.

73.     The Grand property is unlawfully set for sale on February 25, 2022; the 951 property is unlawfully set for sale March 30, 2022, both as a result of the due process violations detailed herein by Judge Chupack and his co-conspirators BA/UT, Locke, Holz, McGivney, Heavner, HSBC, Potestivo, Mal and Nevel.

74.    The foreclosure defendants have been forced to litigate for more than ten years cases HSBC and BA/UT had no lawful right to file or their co-defendant attorneys to prosecute, and as to both of which they have no lawful note, mortgage or allonge.

## COUNTS

1.    **Plaintiffs hereby incorporate by reference paragraphs 1-75 above in each of the following counts as though set forth in each count below. Conspiracy to violate and violation of Cook's right to due process through unconstitutional and unlawful foreclosure re 951 property.**

75.    Defendants to this count are Judge Chupack, HSBC, Potestivo, Mal, Nevel, BA/UT, Locke, Holz, McGivney and Heavner.

76.    Defendants acted intentionally and with malice, in concert to violate Cook's right to due process by violating GAOs and engaging in unlawful ex parte communications all purposely undertaken to deprive him of the 951 property.

77.    Defendants' actions have necessitated that Cook litigate beginning in 2011 to the present though HSBC and its attorney-defendant co-conspirators knew or should have known that HSBC was not a holder and had no legal right to file the foreclosure action, the filing and prosecution of which is itself a further violation of Cook's right to due process.

78.    As a result of defendants' intentional wrongful conduct Cook has sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

2.    **Conspiracy to violate right to due process of CTT, Bryant, Ridgeland Corporation and Rufus Cook.**

79.   Defendants to this count are Judge Chupack, BA/UT, Locke, Holz, McGivney and Heavner.

80.   Defendants acted intentionally and with malice, in concert to violate CT's, Bryant's, Ridgeland Corporation's and Cook's right to due process by violating GAOs and in engaging in unlawful ex parte communications all purposefully undertaken to deprive them of the Grand property.

81.   Defendants' actions have necessitated that plaintiffs litigate since 2007 to the present though BA/UT and its attorney – should have known that BA/UT was not a holder of the Bryant note and had no legal right to file the foreclosure action, the filing and prosecution of which is itself a further violation of these plaintiffs' right to due process.

82.   As a result of defendants' intentional wrongful conduct Cook has sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in an amount sufficient to punish defendants and deter such future violations of due process.

**3.   Conspiracy by Citi and BA/UT and their attorney co-defendants to violate right to due process of CTT, Bryant, Ridgeland Corporation and Cook through unconstitutional foreclosure re Grand property.**

83.   Defendants to this count are BA/UT, Codilis, Manley and Peterka.

84.   Defendants acted intentionally and with malice, and in concert to fabricate an allonge for the purpose of fraudulently asserting holder status for BA/UT in order to foreclose on the Grand property.

85.    Defendants' actions have necessitated that plaintiffs defend against the unconstitutional foreclosure beginning in 2007 and continuing to today.

86.    As a result of defendants' intentional wrongful conduct plaintiffs have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, plaintiffs should be awarded an amount sufficient to punish defendants and deter such future violations.

**4.  Intentional slander of title by defendants BA/UT and Pierce respecting the Grand property done with malice.**

87.    Defendants to this count are BA/UT and Pierce.

88.    Defendants knew that BA/UT was not the holder of the Bryant Note, but nonetheless in 2012 committed slander of title against Bryant, et al., respecting the Grand property.

89.    Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate and defend against the slander of title from 2007 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no interest in the property, said actions being taken with malice. As a result of defendants causing a cloud on the title, sale thereof at a reasonable price has been rendered a virtual impossibility.

90.    As a result of defendants' intentional wrongful conduct plaintiffs have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, plaintiffs should be awarded an amount sufficient to punish defendants and deter such future violations.

**5. Intentional slander of title by defendants BA/UT and Codilis of the Grand property done intentionally with malice.**

91.    Defendants to this count are BA/UT and Codilis.

92.    Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate and defend against the slander of title from 2007 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no interest in the property, said actions being taken with malice. As a result of defendants causing a cloud on the title, sale thereof at a reasonable price has been rendered a virtual impossibility.

93.    Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2007 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose

94.    As a result of defendants' intentional wrongful conduct plaintiff have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**6. Intentional slander of title by defendants BA/UT and Manley of the Grand property done intentionally with malice**

95.    Defendants to this count are BA/UT and Manley.

96.    Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate and defend against the slander of title from 2007 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no interest in the property, said actions being taken with malice. As a result of defendants causing a cloud on the title, sale thereof at a reasonable price has been rendered a virtual impossibility.

97.    Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2007 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose

98.    Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2007 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose

99.    As a result of defendants' intentional wrongful conduct plaintiff have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**7.   Intentional slander of title by defendants BA/UT and Peterka of the Grand property done intentionally with malice**

100.   Defendants to this count are BA/UT and Peterka.

101.   Defendants knew that BA/UT was not the holder of the Bryant Note, but nonetheless in 2014 wrongfully slandering the title against Bryant, et al., respecting the Grand property.

102.   Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2014 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose.

103.   As a result of defendants' intentional wrongful conduct plaintiff have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**8. Intentional slander of title by defendants BA/UT and Locke of the Grand property done intentionally with malice.**

104. Defendants to this count are BA/UT and Locke.

105. Defendants knew that BA/UT was not the holder of the Bryant Note, but nonetheless in 2016 wrongfully slandered the title against Bryant, et al., respecting the Grand property.

106. Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2016 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose

107. As a result of defendants' intentional wrongful conduct plaintiffs have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**9. Intentional slander of title by defendants BA/UT and Holz of the Grand property done intentionally with malice.**

108. Defendants to this count are BA/UT and Holz.

109. Defendants knew that BA/UT was not the holder of the Bryant Note, but nonetheless in 2016 wrongfully slandered the title against Bryant, et al., respecting the Grand property.

110. Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2016 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose

111. As a result of defendants' intentional wrongful conduct plaintiff have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**10. Intentional slander of title by defendants BA/UT and McGivney of the Grand property done intentionally with malice.**

112. Defendants to this count are BA/UT and McGivney.

113. Defendants knew that BA/UT was not the holder of the Bryant Note, but nonetheless in 2016 wrongfully slandered the title against Bryant, et al., respecting the Grand property.

114. Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2016 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose

115. As a result of defendants' intentional wrongful conduct plaintiff have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**11. Intentional slander of title by defendants BA/UT and Heavner of the Grand property done intentionally with malice**

116. Defendants to this count are BA/UT and Heavner.

117. Defendants knew that BA/UT was not the holder of the Bryant Note, but nonetheless in or about 2019 wrongfully slandered the title against Bryant, et al., respecting the Grand property.

118. Defendants' wrongful actions have caused plaintiffs CTT, Bryant, Ridgeland Corporation and Cook to litigate said foreclosure from 2019 to the present although defendants knew that BA/UT was not the holder of the Bryant Note and had no legal right to foreclose

119. As a result of defendants' intentional wrongful conduct plaintiff have sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**12. Intentional slander of title by defendants HSBC and Potestivo of the 951 property done intentionally with malice.**

120. Defendants to this count are HSBC and Potestivo.

121. Defendants knew that HSBC was not the holder of the Cook Note, but nonetheless in 2011 wrongfully slandered the title against Cook respecting the 951 property.

122. Defendants' wrongful actions have caused plaintiff Cook to litigate from 2011 to the present although defendants knew that HSBC was not the holder of the Cook Note and had no legal right to foreclose.

123. As a result of defendants' intentional wrongful conduct Cook has sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**13. Intentional slander of title by defendants HSBC and Mal of the 951 property done intentionally with malice.**

124. Defendants to this count are HSBC and Mal.

43

125. Defendants knew that HSBC was not the holder of the Cook Note, but nonetheless in 2011 wrongfully slandered the title against Cook respecting the 951 property.

126. Defendants' wrongful actions have caused Cook to litigate from 2011 to the present although defendants knew that HSBC was not the holder of the Cook Note and had no legal right to foreclose.

127. As a result of defendants' intentional wrongful conduct plaintiff has sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**14. Intentional slander of title by defendants HSBC and Nevel of the 951 property done intentionally with malice.**

128. Defendants to this count are HSBC and Nevel.

129. Defendants knew that HSBC was not the holder of the Cook Note, but nonetheless in 2011 wrongfully slandered the title against Cook respecting the 951 property.

130. Defendants' wrongful actions have caused Cook to litigate from 2011 to the present although defendants knew that HSBC was not the holder of the Cook Note and had no legal right to foreclose.

131. As a result of defendants' intentional wrongful conduct Cook has sustained actual damages exceeding two million dollars, and punitive damages, including attorneys' fees, in amount sufficient to punish defendants and deter such future violations of due process.

**15. Action to Quiet title re 420 W. Grand, Unit 1A, Chicago, Illinois.**

132.  Defendants to this count are BA/UT and any assignees thereof.

133.  Defendants have no lawful claim and have had no lawful claim to any interest in the Grand property. Accordingly, their claim to any interest in said property must be terminated.

**16. Action to Quiet title re 951 property.**

134.  Defendant to this count is HSBC and any assignees thereof.

135.  Defendants have no lawful claim and have had no lawful claim to any interest in the 951 property. Accordingly, their claim to any interest in said property must be terminated.


## PRAYER FOR RELIEF

WHEREFORE:  for the reasons stated plaintiffs respectfully request that the court enter judgment in their favor as to each count and each defendant, jointly and severally, pursuant to the relief requested in each count, and for such other relief as is appropriate.


Law Office of Barbara Revak
7411 S. Stony Island Ave
Chicago, IL 60649
Telephone No. (773) 752-2000
barbararevak@att.net
Attorney No. 2320258

      and

Law Office of Bruce L. Cook
7411 S. Stony Island Avenue
Chicago, IL 60649
Telephone No. (773) 752-2000
blcook@loblc.com
Attorney No. 6199318

Respectfully submitted,


By: /s/ Barbara Revak
    /s/ Bruce L. Cook
Attorneys for Plaintiffs

ba.hsbc.COMPLAINT.AND.JURY.DEMAND.in.Federal.Suit.BR.gb.2.22.22